720 So.2d 724 (1998)
STATE of Louisiana
v.
Robert Gene LAMBERT, Defendant-Appellant.
Court of Appeal of Louisiana, Third Circuit.
September 30, 1998.
*725 Don M. Burkett, Anna L. Garcie, ADA, for State.
Lawrence Charles Billeaud, Lafayette, for Robert Gene Lambert.
Robert Gene Lambert, pro se.
Before THIBODEAUX, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
The defendant, Robert Gene Lambert, appeals his jury conviction for third offense DWI on the basis of insufficiency of the evidence to sustain a conviction. He was sentenced to five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
We set aside his conviction for operation of a motor vehicle third offense, and remand to the trial court with instructions to impose a sentence of the lower offense of operation of a motor vehicle while intoxicated, second offense.

FACTS
On February 16, 1995, at approximately 10:00 p.m., the Defendant allegedly caused an accident involving a vehicle driven by him and another driven by Tina Campbell Meshell. Although Tina admitted she could not identify the person driving the other vehicle, she ascertained the driver was a large male. Tina could not indicate the race of the individual, but did conclude the driver "wasn't Black."
Tina had been driving in an easterly direction when the unidentified vehicle, traveling in the opposite direction, turned directly in front of her vehicle, clipping her right front and damaging the right side of her vehicle, mostly in the area of her "right fender" or right quarter panel. She coasted across the rural highway and came to rest partially in the left lane of traffic and partially on the shoulder. Her air bag deployed and, experiencing some minor injury, disorientation, and pain, she turned to look for the car that hit her; she saw the vehicle stopped on a road leading into a trailer park, which was immediately perpendicular to the highway on which she had been traveling and within sight of the accident. Slowly, the vehicle then traveled to the end of the road and turned into a drive where two mobile homes were located. Tina followed the headlights and determined its resting point. She described the vehicle as being small and light blue or light gray.
Although Tina could not identify the driver of the vehicle, she knew the trailer park and knew the two trailers located at the drive upon which the then phantom driver had turned his vehicle. She later saw a person exit the vehicle.
Immediately following the accident and without taking her eyes off the involved vehicle, Tina used her cellular phone to call her mother. Her mother arrived at the scene in approximately three to five minutes. Upon her mother's arrival, Tina and her mother discovered the cellular phone was malfunctioning, so Tina's mother went to their cousin's home in the same trailer park in which *726 the Defendant was alleged to have driven and parked. There, she called the Sheriff's office.
Sheriff's deputies arrived in approximately fifteen to twenty minutes. The deputies spoke to the victim and noted the accident scene. Tina's mother told the deputies that she and her daughter saw a man exit the vehicle parked in front of the Defendant's trailer, and she had "no doubt" the man who exited the vehicle that night was the Defendant.
After a few minutes, the two deputies went to the Defendant's home and questioned him about any involvement in an accident. The arrival of the deputies at the Defendant's trailer was within the approximate range of 10:25 to 10:35 p.m. The Defendant denied his involvement in or knowledge of the accident, although he admitted the car parked in front of the trailer was his. According to the officers, the Defendant had been drinking alcoholic beverages when they arrived at his house, and they could smell the odor of beverages "contain[ing] alcohol" on his breath and noticed he was slurring his words, staggering somewhat, and needed to lean on objects to keep his balance.
Both deputies opined that the Defendant was intoxicated. Nonetheless, neither established when the Defendant became intoxicated. Deputy Garcie admitted on the stand that it was not possible to say when the Defendant became intoxicated. Deputy Brandon testified that the Defendant "had been drinking" and he noticed the smell of alcoholic beverages on his breath "very much" at the time they initially approached him.
Trooper Roy Wayne McDonald arrived at the scene at 10:34 p.m. After his initial accident-scene duties had been performed, he approached the Defendant's trailer. This would place his arrival at the Defendant's trailer at around 10:45 p.m. The trooper noted the consistency of the markings on the Defendant's vehicle with having been involved in an accident with Tina's vehicle.
During the entire episode, the Defendant was irate and continually berated the officers, especially Trooper McDonald, commanding them to leave his property. Subsequent to questioning relative to the wreck, the Defendant told the officers they could not "put him behind the wheel." Trooper McDonald smelled "alcohol" on the Defendant and noticed his eyes were bloodshot; however, he did not notice any staggering and noted the yard was full of holes and it was dark. He further noted the Defendant tended to lean on objects around him and was very belligerent.
Eventually, they arrested him for suspected violations of operating a motor vehicle while intoxicated and public intimidation. No field sobriety tests were conducted by law enforcement, which, according to Trooper McDonald, is usually futile when a suspect is as belligerent as the Defendant was. After the Defendant's arrest at approximately 11:15 p.m., he was eventually taken to a detention center where he refused an Intoxilyzer test. Trooper McDonald concluded that the Defendant was "very impaired" and definitely "too much [so] to drive." Trooper McDonald did not interview the Defendant concerning his actions prior to the wreck.

ASSIGNMENTS OF ERRORS NUMBERS ONE AND TWO
In his first two assignments of error, Defendant contends the testimony and evidence presented by the State does not support a conviction for DWI third offense because there was insufficient evidence presented to prove that defendant was the driver of the vehicle, or that he was intoxicated while operating a vehicle.
La.R.S. 14:98 requires that the state prove (1 ) defendant was operating a motor vehicle or other conveyance and (2) defendant was intoxicated while operating the vehicle. State v. Fontenot, 408 So.2d 919 (La. 1981). Defendant challenges the sufficiency of the evidence presented regarding both elements.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements *727 of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Incorporating this rule under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983). This does not mean, however, that every possibility of innocence must be excluded. See generally, State v. Maxie, 93-2158 (La.4/10/95); 653 So.2d 526.
In the case presently before us, a rational trier of fact could have concluded, and in fact did conclude, that the Defendant was indeed driving while intoxicated. The evidence establishes that the Defendant was the driver of the suspect vehicle involved in the accident and at the time was legally intoxicated.
The testimony of the victim, Tina Campbell Meshell, indicates she could not see the driver of the vehicle who collided into her car. She knew he was male and believed only one person was in the vehicle. Although she was not completely sure of race, she stated the person was not black, of which she was sure.
Immediately subsequent to the wreck, Tina called her mom on her cellular telephone and informed her of what had occurred; and all the while, she never took her eyes off Defendant according to her testimony, stating she saw where he went generally. According to Tina, the driver turned down a road adjacent to her and proceeded down the drive, eventually parking in front of one of two trailers. Since she knew a small woman lived in one of the two trailers (and that the person she saw was a large male), she inferred the driver of the other vehicle involved must be going to the other trailer. After the passage of approximately five minutes, she testified a person emerged from the vehicle.
When Tina's mom arrived at the scene approximately five minutes after the wreck, where Tina had been watching the other driver, she spoke with her daughter and then proceeded to their cousin's trailer home in the same park. Tina's mother, Patricia Campbell, also saw Defendant exit his vehicle. She could identify Defendant, Mr. Lambert, as the man exiting the vehicle claimed to have been involved in an accident with her daughter; she had "no doubt" it was Mr. Lambert. Admittedly, Patricia Campbell never saw Defendant's vehicle in motion. However, the vehicle found parked in Defendant's driveway had markings and paint scratches consistent with having been involved in an accident with Tina's Saturn.
Tina stated she never took her eyes off Defendant. The testimony of Tina and her mother is sufficient to establish an unbroken chain of direct eyewitness evidence that Defendant was the driver of the vehicle that collided with Tina. Although Tina could not identify Defendant fully, her mother could identify the person Tina had been watching. Further, her mother could unequivocally state the man she saw was the Defendant.
The factfinder was within its prerogative to believe the testimony of Tina and her mother. Accordingly, particularly in light of the fact that no reasonable hypotheses of innocence existed tending to refute the identification aspect of this case, that identification was, indeed, established beyond a reasonable doubt. Viewing the evidence in the light most favorable to the prosecution, we conclude that this evidence is sufficient to *728 conclude that the Defendant was indeed the driver of the vehicle.
Defendant next contends that there is insufficient evidence to establish that he was intoxicated at the time he operated the vehicle. This assignment of error is likewise rejected.
Tina's mother arrived at the scene approximately three to five minutes after the accident. After briefly speaking with Tina, she went to phone the police from a neighboring relative's home. It was at this time that she saw the Defendant get out of the car. Deputies arrived at Defendant's home roughly twenty-five minutes following the accident. Thus, Defendant was in his home for a maximum of approximately twenty minutes prior to the police officers' arrival. Despite the fact that later the Defendant refused to take an Intoxilyzer test, police testified that they could smell alcohol on his breath and noticed slurred speech, blood shot eyes, and staggering by him. The evidence supports a finding of intoxication.
The Defendant's strongest contention is that he became intoxicated between the time of the accident and the time he met with officers. Admittedly, the jurisprudence does provide some support for defendant's position; however, the facts of this case are exceptional and therefore distinguishable from prior jurisprudence. For example, State v. Chapman, 625 So.2d 1347 (La.App. 3 Cir.), writ denied, 629 So.2d 1180 (La.1993), involved a defendant who stated he did not begin to drink until after the accident in which he was involved. However, in Chapman, over two hours had elapsed between the time of the accident and the time the state trooper found the defendant. In the present case, police confronted the Defendant and observed signs of intoxication within approximately twenty to twenty-five minutes of the accident.
State v. Rutan, 448 So.2d 267 (La.App. 3 Cir.1984) and State v. Willson, 534 So.2d 55 (La.App. 3 Cir.1988) are also distinguishable from the present case. In Rutan, we reversed a conviction for driving while intoxicated because the state failed to establish that the defendant was operating the vehicle. In that case, deputies had found Rutan sitting in his parked car in a lounge parking lot, however they did not observe any damage to the defendant's car. Here, police observed damage to the car consistent with the description of the accident and paint from Tina's Saturn on the vehicle at Defendant's home.
In Willson, this court again reversed a conviction for driving while intoxicated. There defendant had two witnesses to corroborate his story that earlier in the evening, before having had anything to drink, he inadvertently passed a driveway and attempted to make a u-turn. His tire went off the roadway and defendant became stuck in the mud. Unable to retrieve the truck, he walked with his two friends to their home where he consumed alcoholic beverages. Several hours later he went back to check on his truck, encountered police and was arrested for driving while intoxicated. It is important to recognize that unlike the case at hand, the defendant in Willson had several witnesses to support his contention that he did not drive the vehicle while intoxicated. Also, hours had passed between the time defendant's truck became stuck in the mud and the time he was scrutinized by police.
Several factors support the fact that Defendant was indeed driving while intoxicated: (1) two witnesses saw Defendant exit the car immediately following the accident; (2) police observed Defendant in an intoxicated state within a very short time, apparently less than twenty-five minutes after the accident; and (3) Defendant has a history of trials for operating a motor vehicle while intoxicated on at least two prior occasions which suggest that his post-accident drinking is more likely subterfuge than the source of his intoxication. Thus, there is sufficient evidence to uphold Defendant's conviction for driving while intoxicated.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant next contends the state failed to prove one of the predicate offenses utilized to bill this offense, arguing it cannot be conclusively established Defendant knowingly and intelligently pled guilty to the previous *729 offense. Defendant's bill of information indicated he was being charged with DWI, third offense, pursuant to the instant charge and a predicate offense of January 24, 1990, Docket Number 39830, and October 28, 1992, Docket Number 42725. As to the January 24, 1990 guilty plea, the minute excerpt taken at the time of the plea and transcript reveal Defendant pled guilty without counsel. After reviewing the minute extract and what purports to be the transcript, Defendant was informed of his right to counsel and waived that right. However, whether he did so intelligently and voluntarily is not reflected by the record before the court. Defendant raised this issue in a motion to quash, which was denied. The transcript excerpt of the January 24, 1990 waiver of rights, introduced by the state at both the hearing on the motion to quash and the trial, indicates:
Now, each one of you as you come before the Court you are presumed not guilty. You have a right to plead not guilty, you have a right to have an attorney represent you at every stage of the proceeding, if you want an attorney that is, and you are already aware of the fact I think that you are entitled to an attorney whether you can afford one or not, and if you want an attorney and you cannot afford one that the Court will appoint an attorney. You are familiar with that? As a matter of fact, is that what's happened here in all four cases, Mr. Brown, you are appointed to represent all of these individuals.
BROWN: Just Ms. Jones, Your Honor.
COURT: Well, you other three know you have a right to an attorney, don't you?
LAMBERT: Yes, sir.
COURT: And you are telling medo any of the three of you want an attorney?
LAMBERT: No, sir.
THIS IS TO CERTIFY that this is a true and correct transcription of a portion of the Boykin Examination regarding Robert G. Lambert on January 24, 1990. MANY, LOUISIANA, on this 25th day of April, 1995.
s/Joann S. Wright, Court Reporter; (Oct.7, 1997).[1]
The issue is whether the trial court sufficiently determined an unrepresented defendant intelligently and voluntarily pled guilty. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), is the seminal case setting forth the criteria a trial judge should consider before allowing a defendant to plead guilty in the uncounseled context. In Louisiana, State v. Strain, 585 So.2d 540 (La.1991), acknowledged that no talismanic words or phrases were necessary and that less judicial inquiry on the part of a trial judge is permissible in the misdemeanor guilty-plea context vis-a-vis the felony guilty-plea context, but that a waiver must be nonetheless determined by the court to be knowing and intelligent.[2]Strain explains:
While an accused who desires to waive counsel at trial generally should be made aware of the difficulties he might encounter in defending himself during the trial, there is little need to inform him of the pitfalls of self-representation at trial when he intends to plead guilty. [Footnote omitted and paraphrased supra at footnote 2.] The principal function of a lawyer for an accused who desires to plead guilty is to *730 assist him in deciding whether to go to trial, and the judge who accepts an uncounseled guilty plea must satisfy himself that the accused knows and understands that by his waiver of counsel he is giving up his right to this assistance. The critical issue on review of the waiver is whether the accused understood the waiver. What the accused understood is determined in terms of the entire record and not just by certain magic words used by the judge. [Footnote omitted.]
When an accused waives his right to counsel in pleading guilty to a misdemeanor, the trial judge should expressly advise him of his right to counsel and to appointed counsel if he is indigent. The judge should further determine on the record that the waiver is made knowingly and intelligently under the circumstances. Factors bearing on the validity of this determination include the age, education, experience, background, competency and conduct of the accused, as well as the nature, complexity and seriousness of the charge. The nature of the self-representation to be undertaken is also significant, since a layman obviously can more easily understand from a brief explanation by the judge the significance of a guilty plea than he can the significance of defending himself in a felony trial, with the latent dangers and pitfalls attendant thereto. Determining the defendant's understanding of his waiver of counsel in a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial.
Id. at 543-44.
We have interpreted Strain to require more judicial inquiry than the instant colloquy provides. See, e.g., State v. Deroche, 96-1376 (La.11/8/96); 682 So.2d 1251; State v. Rivers, 614 So.2d 254 (La.App. 3 Cir.), writ denied, 623 So.2d 1330 (La.1993). Deroche, 682 So.2d 1251, crystallizes the holdings of Strain and Faretta`s mandates in the misdemeanor-plea setting, summarizing:
The accused's signature on a printed waiver form advising him of his right to counsel and warning him of the danger of self representation, and the signature of the trial judge on the same form that he is satisfied the accused understood the nature of his plea and its consequences, do not discharge the duty of the trial judge to advise the defendant expressly of his right to counsel and to determine "on the record that the waiver is made knowingly and intelligently under the circumstances," taking into account such factors as the defendant's age, background, and education. State v. Strain, 585 So.2d 540, 543 (La. 1991); State v. Morris, 619 So.2d 184, 186 (La.App. 3rd Cir.1993); State v. Gable, 614 So.2d 808, 810 (La.App. 2nd Cir.1993); State v. Rivers, 614 So.2d 254, 257 (La. App. 3rd Cir.1993).
The minutes for relator's November 19, 1990 guilty plea indicate that the trial judge canvassed relator with regard to some of the trial rights he was waiving, but fail to show that the court also inquired into relator's capacity to waive his right to the assistance of counsel in making the decision whether to go to trial, "[t]he principal function of a lawyer for an accused who desires to plead guilty...." Strain, 585 So.2d at 543. The contemporaneous records of relator's guilty plea therefore do not affirmatively establish a valid waiver of counsel and the guilty plea may not serve as the predicate for enhancement of a subsequent DWI offense. State v. Pugh, 588 So.2d 702 (La.1991); State v. Wiggins, 399 So.2d 206 (La.1981); State ex rel. Bishop v. Blackburn, 384 So.2d 406 (La.1980).
Id. at 1252 (Emphasis added).
In the instant matter, the colloquy showed only that Defendant was asked whether he waived his right to counsel; however, no affirmative finding by the trial court relative to capacity to waive was demonstrated by the excerpt of the transcript reviewed at the hearing on the motion to quash, nor does the minute excerpt admitted into evidence at trial show Defendant was questioned as to waiver of counsel. In fact, the latter does not reflect any questioning relative to counsel. Thus, even acknowledging the standard is relaxed in the misdemeanor-plea setting and also because an DWI plea is less complicated than other uncounseled pleas, at a minimum, *731 the trial court should have inquired into Defendant's capacity, i.e., the Faretta-Strain factors, not necessarily including the dangers of self-representation, to make the decision to proceed without counsel and his understanding of those consequences. On the record introduced at trial, it cannot be determined that Defendant knowingly and voluntarily elected to proceed without counsel. In this vein, State v. Sadler, 96-1524 (La.App. 3 Cir. 4/30/97); 693 So.2d 866, likewise held:
An inquiry by the court is required to insure that the accused is making a knowing and intelligent waiver. The nature of the requisite inquiry varies according to the circumstances and stage of the proceeding. State v. Strain, 585 So.2d 540 (La.1991). There is no record in the Sulphur case that the trial court inquired into the defendant's age, education, or mental condition. The defendant gave "Yes, sir" and "No, sir" answers to all questions. There is simply no way to ascertain, from the record of the trial proceedings, the defendant's ability to defend himself, his literacy, competency, understanding, and volition. State v. Bell, 381 So.2d 393 (La. 1980); City of Monroe v. Wyrick, 393 So.2d 1273, (La.1981). The only evidence in the record of his waiver of the right to counsel is on the printed waiver form, which is not enough. State v. Deroche, 96-1376 (La.11/8/96); 682 So.2d 1251.
Id. at 867.
Thus, the only evidence introduced at the hearing and at trial is ambiguous; since the state had the burden to affirmatively prove on the record that Defendant had the benefit of counsel or knowingly and intelligently waived counsel at the proceedings for the predicate offense in question, on the evidence submitted to the trial court, Defendant's predicate offense of January 24, 1990, is constitutionally infirm. See State ex rel. Bishop v. Blackburn, 384 So.2d 406 (La.1980). Accordingly, the maximum offense for which Defendant should have been convicted is DWI, second offense.

CONCLUSION
The evidence is sufficient to prove Defendant's intoxication while operating a motor vehicle; however, the predicate offense of September 24, 1995 is constitutionally infirm and is quashed.
Therefore, because the evidence supports a conviction for the lesser and included offense of operation of a motor vehicle while intoxicated, second offense, Defendant's conviction and sentence on the charge of driving while intoxicated, third offense, is set aside. This matter is remanded to the trial court with instructions to impose a sentence for the lower offense. Accordingly, Defendant's conviction and sentence for third offense DWI is vacated, a judgment of guilty of second offense DWI entered, and this case is remanded to the district court for resentencing.
AFFIRMED AS AMENDED IN PART; VACATED IN PART; AND REMANDED FOR RESENTENCING.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, Judge, dissenting.
I dissent from the majority determination that the state proved beyond a reasonable doubt that the defendant was driving the vehicle while intoxicated. State v. Willson, 534 So.2d 55, 57 (La.App. 3 Cir.1988), which the majority attempts to distinguish, held that:
The circumstantial evidence test and the Jackson, supra, test are not completely separate. "Ultimately, all evidence, direct and circumstantial must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden." State v. Porretto, 468 So.2d 1142, 1146 (La.1985). To convict a defendant for driving while intoxicated, the state must establish: 1) that defendant was operating a motor vehicle or other conveyance, and 2) that defendant was intoxicated while operating the vehicle. State v. Fontenot, 408 So.2d 919 (La.1982); State v. Lindinger, 357 So.2d 500 (La. 1978).
(emphasis added).
In Willson, sheriff's deputies received a report of an accident at 11:30 p.m. When *732 they arrived at the accident scene, they observed a truck stuck in the mud. The defendant was identified to the deputies as the driver by the Chief of Police, who was already at the scene. The defendant performed field sobriety tests that indicated "various manifestations of intoxication," acknowledged being intoxicated, verified his ownership of the vehicle, and admitted to having been driving the vehicle; however, he did not specify when he last operated the vehicle, nor did officers observe him driving the vehicle. At trial, the defendant testified he did not drive the vehicle while intoxicated, and two witnesses corroborated this testimony. This court held the essential element of driving while intoxicated was not proved beyond a reasonable doubt.
State v. Chapman, 625 So.2d 1347 (La.App. 3 Cir.), writ denied, 629 So.2d 1180 (La.1993), involved a defendant who stated he did not begin to drink until after the accident in which he was involved. In Chapman, this court held the evidence insufficient to prove intoxication because "the state presented no evidence that would show that defendant was intoxicated when he drove the vehicle. Simply proving intoxication while defendant is in or near a vehicle has been held insufficient evidence to sustain a D.W.I. conviction." Id. at 1350.
In State v. Rutan, 448 So.2d 267 (La.App. 3 Cir.1984), this court held evidence insufficient under the state's burden to prove guilt beyond a reasonable doubt where the defendant was not shown to have been operating his vehicle while intoxicated. The defendant was found in a parking lot slumped over in the seat of his car. The evidence demonstrated he was intoxicated; however, this court held that, despite the fact the defendant did not take the stand or offer any evidence, La.R.S. 15:438 requires the state to exclude reasonable hypotheses of innocence where it utilizes circumstantial evidence in order to attempt to convict.
In Rutan, this court noted, the "evidence did not show: (a) how long Rutan had been in the parking lot before the deputies arrived; (b) if Rutan had driven the automobile on the highway to the lounge; or (c) if he had driven the car to the lounge, that he was intoxicated when he drove from the highway to the parking lot." Id. at 269 (emphasis added).
In this case, none of the law enforcement officers at the scene questioned the defendant, in any fashion, about his actions prior to their arrival. Giving the most deference to the state, the defendant had at the very least twenty (20) minutes in which to consume alcoholic beverages subsequent to the accident and before deputies first questioned him.
Accordingly, I conclude the state failed to present evidence demonstrating that the defendant had consumed any alcohol prior to driving, much less that he was intoxicated while driving. The defendant's intoxication at his home, at least twenty minutes later when the first law enforcement personnel arrived, is no indication he drove while intoxicated. The circumstantial evidence, as such, fails to exclude or negate the reasonably possible hypothesis that the defendant commenced drinking either after the accident or just prior to it and, in either event, was not intoxicated while driving. Because the state has failed to meet its burden of proof, his conviction should be reversed. La.R.S. 15:271.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] A supplemental record provided to this court of the entire proceeding demonstrates Defendant may have been provided an understanding of the dangers of self-representation. However, this record is not properly before this court. The information contained in the supplemental record of August 28, 1997, was never presented to the trial court. Thus, the excerpted portion before this court of the actual transcript taken at the plea hearing on January 24, 1990, which is also reproduced in the October 7, 1997 supplemental filingis not a true copy of the transcript of January 24, 1990. Portions of the excerpt before the court have been excised from what the original would have provided had it been admitted at the trial. The State introduced this excerpt as evidence item S-1. And, since the State is held to the burden of affirmatively proving the valid predicate and considering as well this court's limited review to only that which was admitted into evidence at trial, the only reviewable item is the excerpted portion of the transcript introduced at trial.
[2] The supreme court found the district court need not counsel a defendant concerning the dangers of self-representation as required by Faretta; however, the mandated inquiry into a defendant's background, age, education, experience, and competency vis-a-vis the nature and complexity of the charge was left intact. Strain, 585 So.2d at 540-541.