J¿FOIL, J.
Defendant, Earl Blake Young, was charged by bill of information with at *7 tempted armed robbery, a violation of La. R.S. 14:27 and La. R.S. 14:64 (Count 1), and with attempted second degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1. (Count 2). He pled not guilty. After a preliminary examination, the trial court found no probable cause on Count 1 and probable cause on Count 2. The state amended the bill of information to charge defendant with attempted simple robbery, a violation of La. R.S. 14:27 and La. R.S. 14:65 (Count 1), and with second degree battery, a violation of La. R.S. 14:34.1 (Count 2).[1] After a trial, the jury found defendant guilty as charged. Defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied. The trial court sentenced defendant to three and one-half years at hard labor for the attempted simple robbery conviction and to five years at hard labor for the second degree battery conviction. The sentences were ordered to run consecutively. Thereafter, the state filed a bill of information charging defendant as a fourth felony habitual offender. After a hearing, the trial court took the matter under advisement. Subsequently, the trial court adjudicated defendant as a third felony habitual offender. The court sentenced defendant to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.[2]
FACTS
At approximately 6:50 p.m. on August 14, 1995, New Roads Police Department Detective John R. Jarreau was called to investigate a crime at Hambrick’s Grocery. He arrived at about 7:10 p.m. and saw the victim, Mr. Fred Hambrick, receiving emergency treatment. The victim’s throat was red, there was |3a small amount of blood coming from his eye, and he was twisting his head from side to side. Inside the store, he saw several objects that appeared to have been pulled or knocked down from the shelves behind the cash register and counter. As a result of his investigation, the detective arrested defendant. When the detective asked defendant what happened, he said that he and Mr. Hambrick had gotten into a fight. On cross-examination, the detective stated that the store’s cash register was closed when he arrived inside the building.
Dr. Christopher Ritter, who was qualified as an expert in internal medicine, was the emergency room physician who treated the victim. During the treatment, the victim was excited, agitated and in mild distress. The victim told the' doctor that the attacker attempted to choke him. The victim had a bloody nose and tenderness in the thyroid area below the larynx (the bone in the lower throat area). Dr. Ritter testified that the injuries were consistent with difficulty in talking because of the proximity to the vocal cords and the area where the air is moved in and out of the lungs. The doctor further testified that although the victim’s injuries did not result in a substantial risk of death, choking could have.
The doctor admitted that the hospital records indicate the victim’s condition was good and that he was released after treatment in the emergency room. Mr. Hambrick was conscious and not in any extreme physical pain. He had neither protracted or obvious disfigurement, protracted loss or impairment of a function of a bodily member or organ, nor substantial risk of death when he treated him. However, the doctor admitted that complaints of continued difficulty or *8 symptoms of frequent coughing and clearing the throat would be a manifestation of impairment of a bodily function which would not have been seen shortly after the incident. Additionally, the doctor admitted that a person who was choked to the Upoint of substantial risk of death and who lost consciousness could be treated at a hospital and discharged; there was not a lot of treatment for that type of injury.
Because the victim died before the trial from a condition unrelated to the attack, the transcript of the victim’s testimony at the November 1995 preliminary examination hearing was introduced during the trial. This transcript revealed that Mr. Hambrick owned a gas station and grocery store in New Roads. He had one cash register and a long counter near the entrance of the store. In the late afternoon of August 14, 1995, the victim was on the cash register side of the counter doing bookkeeping. While his back was slightly turned, defendant jumped on top of the counter and dove on top of him. Defendant grabbed the victim by the neck and stated, “I got you. I got you.” The men fell into a corner and the seventy-two year old victim was able to free himself using a technique he learned in the army. During the struggle, the victim recognized defendant and wanted to know the reason for the attack. The men knocked over glass jars behind the counter and continued to fight until the victim was able to knock defendant outside the store’s door. Defendant jumped the fence and fled. The victim was certain about his identification of defendant as the perpetrator. When asked if defendant demanded money or anything, the victim replied that he believed defendant did not make this demand because he was too busy choking him. He explained that when he kept calling defendant by name and asked the reason for the attack, defendant only dug his fingers deeper into his throat. The victim also stated that he continued to have problems with his throat.
Mr. Robert Theodore testified that he lives one street from the victim’s grocery store. On the day of the incident, he recognized defendant by name and saw him walking fast behind his house. Mr. Theodore asked defendant what he was doing there and he replied that “he had a fight on the corner with some | ¡¿youngster.” Mr. Theodore was leaving in his car and defendant asked for a ride to his home.
Ella Hambrick, the victim’s wife, testified that she and her daughter were in her home near the grocery store. Around 6:30 p.m., a young woman ran to her house and told her to go to the store. Mrs. Ham-brick immediately ran to the store and saw her husband, out of breath, hardly able to talk and sitting on a chair. He complained that his throat burned, hurt and was irritated, and stated that he was choked “so terribly he could hardly breathe.” The victim also stated that he believed he was going to die. When he returned home from the hospital, the victim was in bed for about a week and his wife applied towels and ointment to his throat. She recalled that the victim’s voice was hoarse and that he had trouble talking and did not eat much. Although the hoarseness subsided some, it never stopped entirely.
Defendant did not present any evidence.
SUFFICIENCY OF THE EVIDENCE
In his sole assignment of error, defendant argues that the evidence was insufficient to support his convictions. Specifically, he contends that there was insufficient evidence of the element of specific intent to take anything of value required for the attempted simple robbery conviction. He also argues that the state did not prove the specific intent to cause serious bodily injury to the victim which was a necessary element for the second degree battery conviction.
The state counters that the facts support a finding that defendant attempted to choke the victim “to the point of unconsciousness or even death, so that he could rob [the victim].” It further argues that *9 the facts support a finding that defendant intended to cause the victim extreme physical pain or protracted loss or impairment of the function of a bodily member or a substantial risk of death.
Attempt is defined in La. R.S. 14:27(A) as follows:
LA. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Second degree battery is defined in La. R.S. 14:34.1 as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
La. R.S. 14:65(A) defines simple robbery as:
A. Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
Defendant argues that the evidence shows the victim did not indicate that his assailant attempted to take anything from the cash register or him, nor did the perpetrator announce a robbery, or demand money or that the cash register be opened; rather his words to the. victim were only “I got you.” Defendant further contends that if the motive were robbery, he could have reached over the counter and opened the cash register. Defendant also argues that the mere fact that the cash register was nearby is not evidence that the perpetrator intended to rob the victim. Rather, the evidence only shows a physical altercation between him and the victim. Defendant also contends that the trial judge was incorrect when he stated, in his reasons for denying defendant’s motion for new trial, that the cash register was open when the victim was attacked.
The state argues that the only reason for the attack was to rob the victim. It contends that the lack of a dispute or feud between the men was evidenced by the victim’s statement to defendant, “why are you doing this to me?” The state also 17cites State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822, writ denied, 94-2077 (La.9/20/96), 679 So.2d 422, as authority for the jury’s reasonable inference from the circumstances that defendant intended to rob the victim. Defendant counters that State v. Davis is distinguishable from the instant case because, in Davis, the victims and perpetrators did not know each other, the attack occurred on a street, and the perpetrators used a gun in the incident.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, i.e., “assuming every fact to be proved that the evidence tends to prove,” every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. See State v. Northern, 597 So.2d 48, 51 (La.App. 1st Cir.1992). The reviewing court is required to *10 evaluate the circumstantial evidence in the light most favorable to the prosecution and determine if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817, 821 n. 6 (La.1987); State v. Trahan, 93-1116, p. 5 (La.App. 1 Cir. 5/20/94), 637 So.2d 694, 698-699.
To support a conviction for attempted simple robbery the state must show that defendant had the specific intent to take a thing of value. Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. State v. Bates, 95-1513, p. 9 (La.App. 1 Cir. 11/8/96), 683 So.2d 1370, 1375. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989).
In State v. Davis, the court concluded that “[defendant’s] action in pointing the gun to [the victim’s] head is clearly an act tending directly toward defendant’s objective of robbing Ms. Woods... .We think it quite reasonable for the jury to infer from the circumstances presented that defendant intended to commit an armed robbery of Ms. Woods and her companions.” State v. Davis, 93-0663 at p. 5, 633 So.2d at 825. In the instant case, like Davis, we find there was sufficient evidence presented from which the jury could have reasonably inferred that defendant intended to rob the victim. Defendant jumped over the counter near the cash register and attacked the victim to subdue him. Defendant attacked the victim in his place of business where it was reasonable to believe that money and items of value would be located. We find that the state’s evidence, including the victim’s testimony, was sufficient to negate any motive for the attack other than robbery, and conclude that the evidence precluded beyond a reasonable doubt a reasonable hypothesis of innocence. This argument lacks merit.
As to the second degree battery conviction, we again find that there was sufficient evidence to prove that defendant had the intent to inflict bodily injury involving: (1) extreme physical pain; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) substantial risk of death. Defendant attacked the victim by choking him. The attack stopped only after the victim was able to free himself and throw defendant out of the store. Dr. Ritter testified that the injury was consistent with the victim’s difficulty in talking, and that choking | ncould involve a substantial risk of death. The victim’s wife stated that her-husband remained in bed for a week after the incident, was hoarse and had trouble talking. Based on these facts, we believe that a jury could have reasonably found that the state proved an intent to inflict an injury that involved a substantial risk of death or the impairment of the function of a bodily member. This argument is without merit.
CONVICTIONS AFFIRMED.
GUIDRY, J., dissents and assigns reasons.

. The record does not reflect that defendant was re-arraigned after this amendment. Nevertheless, failure to re-arraign the defendant was waived, since defendant did not object before trial. See La.C.Cr.P. art. 555; State v. Cousin, 96-2035, p. 2 n. 2 (La.App. 1 Cir. 9/23/97), 700 So.2d 1016, 1017 n. 2, writ denied, 97-2809 (La.3/13/98), 712 So.2d 875.

. Defendant's appeal of his adjudication as a habitual offender and sentence is addressed in the companion case of State v. Young, 99 KA 1310 (La.App. 1 Cir. 4/17/00), 769 So.2d 12, also decided this date.