800 So.2d 847 (2001)
STATE of Louisiana
v.
Earl Blake YOUNG.
No. 2000-K-1437.
Supreme Court of Louisiana.
November 28, 2001.
C. Jerome Daquila, New Roads, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Richard J. Ward, Jr., District Attorney, John W. Jewell, New Roads, Counsel for Respondent.
KIMBALL, Justice.[*]
This Court granted the application of the defendant, Earl Blake Young, to consider the sufficiency of the evidence supporting his jury convictions for attempted simple robbery, a violation of La. R.S. 14:27 and La. R.S. 14:65, and second degree battery, a violation of La. R.S. 14:34.1. For the reasons that follow, we *848 find the evidence was insufficient to support the elements of the crime of attempted simple robbery but sufficient to support the elements required for the crime of second degree battery. We therefore reverse the defendant's conviction for the crime of attempted simple robbery and affirm the defendant's conviction for the crime of second degree battery.

FACTS AND PROCEDURAL HISTORY
At approximately 6:50 p.m. on August 14, 1995, Detective John R. Jarreau of the New Roads Police Department was called to investigate a crime which had been committed at Hambrick's Grocery. When Detective Jarreau arrived at Hambrick's Grocery, he saw the victim, a seventy-two year old man named Fred Hambrick, receiving emergency treatment, prior to being transported to Pointe Coupee Parish Hospital. Mr. Hambrick's throat was red, there was a small amount of blood coming from his eye, and he was twisting his head from side to side. When the detective entered the grocery store, he saw several objects that appeared to have been either pulled down or knocked down from the shelves behind the counter and cash register. However, the detective stated that the cash register was closed.
Dr. Christopher Ritter, a specialist in internal medicine, treated Mr. Hambrick in the emergency room. Dr. Ritter stated that Mr. Hambrick was excited, agitated, and in mild distress during the treatment. Mr. Hambrick told the doctor that the attacker choked him, but he was able to repel the assailant. Upon examination, the doctor noted that Mr. Hambrick had a bloody nose and tenderness in the hyoid area below the larynx (the bone in the lower throat area). Dr. Ritter testified that the injuries were consistent with difficulty in talking because of the proximity of the vocal chords and the area where the air moves in and out of the lungs. Further, Dr. Ritter stated Mr. Hambrick's condition was fair and that he was released after treatment in the emergency room.
Mr. Hambrick testified[1] that he owned a gas station/grocery store in New Roads. A long counter ran the length of the store and separated the shopping area. The cash register was on the counter. In the late afternoon of August 14, 1995, Mr. Hambrick was seated on the cash register side of the counter working on his bookkeeping because there were no customers in the store. Mr. Hambrick's back was slightly turned away from the store entrance, when the defendant jumped on top of the counter and dove on top of Mr. Hambrick. According to Mr. Hambrick, the defendant grabbed him by the neck and stated, "I got you. I got you." The two men fell to the floor. After struggling for a while, Mr. Hambrick managed to free himself from the defendant's grip, employing a technique he taught during his military service in Germany during World War II. As the men struggled, Mr. Hambrick recognized the defendant and asked him the reason for the attack. Defendant did not respond to Mr. Hambrick's inquiry. Instead, the defendant only dug his fingers deeper into Mr. Hambrick's throat. Mr. Hambrick testified that he believed the defendant did not demand money from him because the defendant was too busy choking him. In the course of the struggle, the two men overturned glass jars which were behind the counter. Ultimately, Mr. Hambrick managed to knock the defendant out the store's rear door. The *849 defendant immediately jumped a fence in the yard and fled. Mr. Hambrick also testified that as far as he knew, nothing was missing from the store following this incident.
Mr. Robert Theodore, a neighbor who lived one street from Hambrick's Grocery, testified that he saw the defendant just after the attack and watched him walk quickly behind his house. When Mr. Theodore recognized the defendant, he asked the defendant what he was doing there. In response, the defendant stated that "he had a fight on the corner with a youngster."
Mr. Hambrick's wife, Ella Hambrick, testified that a young woman ran to her house around 6:30 p.m. on the day of the incident and told her to go immediately to the store. Mrs. Hambrick found her husband sitting on a chair, out of breath, and barely able to speak. She stated that her husband complained that his throat burned and said that he was choked so terribly that he could hardly breathe. Mr. Hambrick also told his wife that he thought he was going to die. Even though Mr. Hambrick was released from the hospital on the evening of his attack, he remained in bed for a week. Mrs. Hambrick recollected that her husband's voice was hoarse, he had difficulty talking, and he did not eat much for some time. She stated that even though her husband's hoarseness improved, it never completely stopped.
As a result of the police investigation, Detective Jarreau arrested the defendant. The State charged the defendant with attempted simple robbery, a violation of La. R.S. 14:27[2] and La. R.S. 14:65,[3] and second *850 degree battery, a violation of La. R.S. 14:34.1.[4] A jury tried the defendant on August 24-25, 1998 and found him guilty as charged.[5] The defendant filed a motion for a new trial and a motion for a postverdict judgment of acquittal. The trial court denied the defendant's motions and sentenced the defendant to three and one-half years at hard labor for the crime of attempted simple robbery and five years at hard labor for the crime of second degree battery; the sentences to be served consecutively.[6]
On appeal, a majority of the court affirmed the defendant's convictions. With one judge dissenting, the appellate court found that the evidence was sufficient to support the jury determination that the defendant had the requisite intent to take a thing of value from Mr. Hambrick and that the defendant intended to inflict injury on Mr. Hambrick that involved a substantial risk of death or impairment of the function of a bodily member. See State v. Young, 99-1309 (La.App. 1 Cir. 4/17/00), 769 So.2d 6. Defendant then filed this writ application, which we granted to address the correctness of the court of appeal's judgment.

LAW AND DISCUSSION
The issue presented in this appeal is whether the State produced sufficient evidence to support the defendant's convictions for attempted simple robbery and second degree battery. Defendant contends that there was insufficient evidence of the element of specific intent to take anything of value from the victim, which is required to prove the crime of attempted simple robbery. Defendant states that he made no demands on Mr. Hambrick, and he did not attempt to remove anything from Mr. Hambrick or the store. The defendant also contends that the State did not prove the element of specific intent to *851 cause serious bodily injury to the victim, which is required to prove the crime of second degree battery. Defendant states that there is no evidence that he intended to inflict serious bodily injury on Mr. Hambrick or that Mr. Hambrick actually suffered serious bodily injury, as medical testimony indicated that Mr. Hambrick only showed signs of throat trouble. The State, on the other hand, argues that the facts support a finding that the defendant intended to inflict extreme physical pain on Mr. Hambrick by choking him so that the defendant could then rob Mr. Hambrick.

Sufficiency of the Evidence
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Captville, 448 So.2d 676, 678 (La.1984). That standard states that "the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." Captville at 678. The Louisiana Legislature codified this standard in La.C.Cr.P. art. 821 which applies to post-verdict motions for acquittal based on insufficiency of the evidence. Therefore, on appeal,
[a]n appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. As stated by this court in State v. Chism, 436 So.2d 464, 470 (La.1983), La. R.S. 15:438 "may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence".
Captville at 678.

Attempted Simple Robbery
La. R.S. 14:65(A) defines simple robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon. La. R.S. 14:27(A) further provides that to attempt to commit a crime, an accused must do or omit an act tending directly toward the accomplishment of the crime while "having a specific intent" to commit the crime. La. R.S. 14:10(1) defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. In order to prove an attempted simple robbery, the State had to prove that the defendant: (1) had a specific intent to commit the crime of simple robbery, and (2) did an act for the purpose of and tending directly toward the commission of the crime of simple robbery.
In the instant case, the evidence showed that the defendant surprised Mr. Hambrick by jumping onto the counter, subduing Mr. Hambrick, and stating, "I got you. I got you." Although Mr. Hambrick asked the defendant during their physical struggle why he was attacked, the assailant gave no response. Instead, the defendant continued to attack Mr. Hambrick. Mr. Hambrick was able to fight off the defendant, *852 and the defendant fled the grocery store. The State did not provide any evidence tending to show that the defendant was attempting to take anything of value from Mr. Hambrick or his grocery store. In fact, the officer at the scene testified that when he arrived at the grocery store, the cash register was closed. Mr. Hambrick also testified that he did not notice any money or supplies missing from the store. Furthermore, the State did not provide any evidence showing that the defendant attempted to open the cash register or take any supplies from the grocery store.
The main fact to be proved by the State was that the defendant entered Hambrick's Grocery to take something of value from the owner. However, based on the evidence presented, we find that no reasonable juror could have concluded beyond a reasonable doubt that the defendant attempted to take anything of value from Mr. Hambrick. As explained above, the State simply provided no evidence tending to show that defendant had any intent to take anything of value from the grocery store or its owner. Accordingly, we find the State's evidence was insufficient to prove beyond a reasonable doubt that the defendant attempted to rob Mr. Hambrick or his grocery store. Therefore, we reverse the defendant's conviction of attempted simple robbery.

Second Degree Battery
La. R.S. 14:33 defines battery as the intentional use of force or violence upon the person of another. La. R.S. 14:34.1 further defines second degree battery as a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. As specified in La. R.S. 14:34.1, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or a substantial risk of death. In order to prove a second degree battery, the State had to prove that the defendant: (1) committed a battery upon another, (2) without his consent, and (3) intentionally inflicted serious bodily injury.
In the instant case, Mr. Hambrick testified that the defendant attacked him from behind the counter and grabbed him by the neck. The choking intensified after Mr. Hambrick verbalized the defendant's name. Dr. Ritter, the emergency room physician, testified that Mr. Hambrick was excited, agitated and in mild distress when he treated him. Mr. Hambrick had a bloody nose, tenderness in the hyoid area below the larynx, and complained of pain at an incision in his lower abdominal area.[7] Dr. Ritter testified that the defendant's act of choking Mr. Hambrick could have resulted in a substantial risk of death. Dr. Ritter also explained that although Mr. Hambrick was able to talk fairly well at the time of his initial treatment, frequent coughing and clearing of one's throat would be manifestations of the impairment of a bodily function or member.
At the preliminary examination three months after the defendant's arrest, Mr. Hambrick explained that he was still having throat problems caused by the defendant's attack. As reflected in the stenographer's notation, Mr. Hambrick cleared his throat during his testimony at the preliminary examination and explained that his throat still hurt. Mrs. Hambrick further testified that immediately after the *853 attack, her husband could hardly talk and that he would have to stop and clear his throat several times. She stated that her husband remained in bed for a week after the attack, that he was hoarse, and he had trouble talking. She also stated at trial that Mr. Hambrick's ability to talk was affected for many months after the assault.
Viewing these facts in the light most favorable to the prosecution, we find that, based on Dr. Ritter's testimony and the totality of the evidence presented, a jury could reasonably determine that the defendant intended to inflict an injury on Mr. Hambrick which involved the impairment of a bodily function or a substantial risk of death without his consent. Therefore, we affirm the defendant's conviction of second degree battery.

DECREE
Defendant's conviction of attempted simple robbery is hereby reversed and the sentence therefor is set aside. Defendant's conviction of second degree battery is affirmed subject to the order of the court of appeal in No. 99-1310 which reversed defendant's third felony habitual offender adjudication, vacated defendant's sentence, and remanded the case to the trial court for resentencing.
REVERSED IN PART; AFFIRMED IN PART.
KNOLL, J., dissents in part and concurs in part, and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, Justice,[*] concurring in part and dissenting in part.
I agree with the majority's affirmation of defendant's conviction for the crime of second degree battery. However, I dissent from its conclusion that the defendant's conviction for the crime of attempted simple robbery must be reversed because the State provided insufficient evidence that the defendant attempted to take anything of value from Mr. Hambrick.
On appellate review, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83, quoting State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the reviewing court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Mitchell, 772 So.2d at 83. When circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983); State v. Austin, 399 So.2d 158 (La.1981).
In the present case, the main fact to be inferred was that the defendant entered Hambrick's Grocery to take something of value from the owner. Although there was no showing that the defendant attempted to open the cash register or to take any groceries, the evidence reflected that when Mr. Hambrick recognized the defendant, he pointedly asked why defendant had attacked him and received no response from the defendant. In addition, *854 the defendant attacked Mr. Hambrick on the side of the counter which would have given him access to the cash register.[1] Significantly, Mr. Hambrick fought defendant off and threw him out of the store before defendant had an opportunity to take or demand anything.[2] A reasonable juror could have inferred from Mr. Hambrick's question that no pre-existing dispute or feud existed between him and the defendant which would have explained defendant's actions. Thus, this possible alternative hypothesis was negated. Moreover, relying upon the common sense experience of the jurors, the evidence showed that the defendant attacked Mr. Hambrick when he was alone in his place of business where money and other items of value were located, that the defendant increased the severity of his attack after Mr. Hambrick recognized his assailant's identity, and that Mr. Hambrick fought the defendant off before he could take or demand anything. Accordingly, I find that the State's evidence sufficiently negated any motive for the defendant's attack other than robbery, and conclude that the evidence precluded beyond a reasonable doubt a reasonable hypothesis of defendant's innocence. Accordingly, I would affirm the jury's resolution of this issue. For these reasons, I respectfully dissent from this portion of the majority opinion.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] Mr. Hambrick died prior to trial from a condition unrelated to the attack. His testimony from the November 7, 1995 preliminary examination was introduced at defendant's trial.
[2] La. R.S. 14:27 provides the definition of criminal attempt as:

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both. If the offense so attempted is theft, and is punishable as a felony, he shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
[3] La. R.S. 14:65 provides the definition of simple robbery as:

A. Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
B. Whoever commits the crime of simple robbery shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than seven years, or both.
[4] La. R.S. 14:34.1 provides the definition for second degree battery as:

Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
[5] Initially, the State charged defendant with attempted armed robbery and attempted second degree murder. After a preliminary hearing, the trial court found no probable cause on the charge of attempted armed robbery and found probable cause on the charge of attempted second degree murder. The State amended the bill of information and charged the defendant with attempted simple robbery and with second degree battery.
[6] After the defendant's sentencing, the State filed a bill of information charging the defendant as a fourth felony habitual offender. After a hearing was held, the trial court adjudicated the defendant as a third felony habitual offender. Thereafter, the trial court vacated the defendant's original sentences and resentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant appealed his adjudication as a habitual offender and his sentence. The First Circuit Court of Appeal reversed the defendant's adjudication as a third felony habitual offender, vacated his sentence, and remanded the matter to the trial court for resentencing. See State v. Young, 99-1310 (La.App. 1 Cir. 4/17/00), 769 So.2d 12. No application for writ of certiorari was sought by the State from this ruling and therefore this ruling is not before this court.
[7] At the preliminary examination, Mr. Hambrick stated that he recently had stomach surgery.
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] Compare State v. Stone, 615 So.2d 38 (La. App. 3 Cir.1993), which held there was insufficient evidence that defendant intended to take anything from the store to support her conviction for attempted armed robbery. In that case, the appellate court noted that although the defendant attacked the store clerk with a knife, the attack took place away from the cash register and there was nothing on the store videotape which revealed that the defendant desired to take anything of value.
[2] Because the defendant was charged with attempted simple robbery, the act of taking need not be established. See State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, 991, writ denied, 96-1019 (La.10/4/96), 679 So.2d 1377, 96-2087 (La.10/7/96), 680 So.2d 639 (holding that the act of taking need not be established to prove an attempted armed robbery).