# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-1221

**STATE OF LOUISIANA**

**VERSUS**

**JAMES R. FRANCIS**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. CR 125228.2, DIV. F
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

**J. DAVID PAINTER
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Brent Hawkins
Louisiana Appellate Project
P. O. Box 3752
Lake Charles, LA  70602
(337) 502-5146
COUNSEL FOR DEFENDANT-APPELLANT:**
   James R. Francis

**Michael Harson, District Attorney
Roger P. Hamilton, Jr.,  Assistant District Attorney
Courthouse Building
P. O. Box 3306
Lafayette, LA  70502
(337) 232-5170
COUNSEL FOR APPELLEE:**
   State of Louisiana

**PAINTER, Judge.**

Defendant, James R. Francis, appeals his conviction and sentence on the charge of second degree murder. For the following reasons, we affirm Defendant's conviction and sentence and further order the trial court to inform Defendant of the correct prescriptive period of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice into the record.

## FACTS AND PROCEDURAL HISTORY

On August 31, 2008, Defendant shot the victim, Qaher Abualoff, in the parking lot at Food World in Lafayette, Louisiana. The victim sustained a bullet wound to the head above the eyebrow and died two days later.

Tawfic "Sam" Saleh was a part owner of Food World and was in the process of transferring it to the new owners, the victim and Saber Zaben, at the time of the shooting. Defendant had worked for Mr. Saleh about two years before this incident as a "helper carpenter."

On the day of the shooting, Mr. Saleh first saw Defendant when he came into the store, very angry. Defendant asked for Mr. Saleh, who spoke to Defendant in the back of the store. When he saw Defendant walk out of the store, Mr. Saleh walked out also. As they talked outside, Defendant's brother, Michael Francis, came outside, and appeared to be very angry. Michael had been arguing with the victim inside the store.

The victim came outside, and Michael exchanged words with him. Mr. Zaben and the victim's wife also came outside, and all of them watched the argument. They tried to make Michael leave. Defendant then stepped back and lifted his shirt, and Mr. Saleh saw a gun. Defendant began shooting. The victim

was shot in the head, and the others ran back inside. Mr. Saleh heard another shot that he thought was intended for him.

Everyone went to the office, then Mr. Saleh went back to look outside. He saw a green car with the trunk open, and he saw Michael grab the shotgun and put it in the trunk. Mr. Saleh never saw the victim do any threatening act.

Wagdan Hussein, Mr. Zaben's wife, testified that she saw Michael come in the store and purchase two beers. Michael became very upset because he wanted the victim to package the two beers in separate bags. Michael began yelling and swearing, and he walked outside. Mr. Zaben followed him outside to see why he was so mad. The victim tried to calm Michael and then asked him to leave and not come back. Mrs. Hussein testified that Defendant then pulled the gun and shot the victim. Mrs. Hussein identified Defendant as the shooter at trial.

Joshua Duruise, who was at the store at the time of the incident, testified that he saw Defendant hollering at Mr. Saleh outside the store on the day of the incident. According to Mr. Duruise, a man inside the store (Michael) was buying some beer and was yelling and complaining that the beer needed to be in two bags. A man behind the counter (Mr. Saleh) attempted to calm Michael and asked why he was so mad. When Michael threatened to go behind the counter and kick Mr. Saleh and then headed in that direction, "the guy behind the counter started to come out like he was going to fight him." Mr. Duruise stated that the victim, who "was trying to make peace," urged the customer to leave the store. Mr. Duruise stated that Defendant was outside, and the victim went outside. The victim was holding his baby, and he gave the child to his wife when "[h]e went outside to break them up[,] and he got shot." Mr. Duruise testified that he did not see anyone pushed or hit but that he saw Defendant pull a gun out of his shirt and kill the

2

victim. Less than a minute passed between the time they went outside and the time the shot was fired.

Patrena Rubin, who was shopping at Food World at the time of the incident, testified that she saw Mr. Saleh ask a man where he was from, "trying to be nice to the customer[,] but the customer got upset." The customer went outside, and Ms. Rubin went outside and got in her car. She heard a gunshot and saw the victim fall to the ground. Ms. Rubin identified Defendant as the shooter.

Andy Latiolais testified that he was walking into Food World when he saw a "guy having an altercation with some people. He was very loud, arguing. The other man was saying, 'Leave, leave.'" The next thing Mr. Latiolais knew, a "guy in a big hat drew out a pistol and shot the [victim]." Mr. Latiolais heard another shot that "sounded close" and then heard a third shot. Although the victim and the other man (Michael) argued, the victim was keeping his distance, and Mr. Latiolais testified that he did not see anyone hit or push anyone else.

Michael Francis also testified at trial. He was charged with second degree murder of the victim and as a felon in possession of a firearm, but he had not yet gone to trial. Michael testified that when he and Defendant arrived at Food World on the day of the incident, Defendant left him to talk outside with Mr. Saleh, and Michael went inside to get some beer. According to Michael, a man in the store (the victim) asked Michael where he was from several times and followed him to his car outside. Mr. Saleh put his hands on Michael, "[a]nd he placed the little girl on [his] arm," making Michael feel like he could not defend himself. Another man (apparently the victim) stood nearby with his hands on his pocket. Michael then heard a gunshot; he ran to the back seat of his car and grabbed a car jack to use as some type of protection.

3

Michael testified that the victim was trying to pry something out of his pocket. He never saw what was in the pocket, and he was never concerned about his safety. However, Michael testified that Mr. Saleh and the victim were approaching him and Defendant in a manner that did not feel friendly and that he felt as if they were trying to agitate him or take something from him. Michael stated that there was no physical contact other than Mr. Saleh grabbing Michael's arm.

At the time of his testimony, Michael was charged as a principal in another murder in Abbeville and with being a felon in possession of a firearm. He had a prior conviction of manslaughter.

Defendant and Michael were identified through photo lineups. Michael was arrested and charged as a principal to this murder, and he did not know where Defendant was after that time. Police conducted an extensive search for Defendant, who was finally located in Houston and transported back to Lafayette almost a year later, on July 8, 2009.

A grand jury indicted Defendant for second degree murder, a violation of La.R.S. 14:30.1. After a jury found Defendant guilty as charged, Defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.

Defendant now appeals his conviction, arguing that the evidence was insufficient to convict him, that his constitutional right to confront his accusers was violated by the trial court's admission of the autopsy report, and that the trial court improperly advised him about the prescriptive period for filing post-conviction relief. We affirm Defendant's conviction and sentence. Further, we order the trial court to inform Defendant of the correct prescriptive period of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the

4

rendition of this opinion and to file written proof that Defendant received the notice into the record of these proceedings.

**DISCUSSION**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find that there is one error patent which is also raised by Defendant in his third assignment of error.

Defendant contends that the trial court erred by improperly advising him about the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. The State agrees that the trial court did not properly advise Defendant about his post-conviction rights.

According to La.Code Crim.P. art. 930.8, the two-year prescriptive period for filing an application for post-conviction relief begins to run when the defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. The trial judge advised Defendant at sentencing that he had "two years to file any post-conviction relief petitions you may choose to file in the future." For this reason, the trial court is hereby ordered to inform Defendant of the correct prescriptive period of article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice into the record of these proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

*Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to find him guilty of second degree murder. Rather, he argues that the evidence showed that he shot the victim "in sudden passion or heat of blood immediately caused by provocation

5

sufficient to deprive an average person of his self-control and cool reflection." Defendant believes he should have been found guilty of manslaughter, not second degree murder, because he "was provoked to the point 'that would deprive the average person of self-control and cool reflection.'"

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165; *State v. Lubrano*, 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27). Our supreme court has stated:

6

However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.' " *McDaniel v. Brown,* 558 U.S. ___, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378 (alteration in original).

"Second degree murder is the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La.R.S. 14:30.1(A)(1). "It is well-settled that the act of pointing a gun at a person and firing the gun is an indication of the intent to kill that person." *State v. Thomas*, 10-269, p. 7 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, 1215 *writ denied,* 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied,* __ U.S. __, 132 S.Ct. 196 (2011) (citations omitted).

Defendant contends that the evidence supports a conviction of manslaughter. "Sudden passion" and "heat of blood" are not elements of the crime of manslaughter. "Rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed in the absence of these factors." *State v. Snyder,* 98-1078, p. 4 (La. 4/14/99), 750 So.2d 832, 837-38.

7

Regardless of the words exchanged, "mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter." *State v. Massey,* 535 So.2d 1135, 1143 (La.App. 2 Cir.1988). *See also State v. Mitchell,* 39,202 (La.App. 2 Cir. 12/15/04), 889 So.2d 1257, *writ denied,* 05-132 (La.4/29/05), 901 So.2d 1063, quoting *State v. Conerly,* 48 La.Ann. 1561, 21 So. 192 (1897)). "Further, an argument alone will not be a sufficient provocation in order to reduce a murder charge to manslaughter. *State v. Miller,* 98-642 (La.App. 3 Cir. 10/28/98); 720 So.2d 829, citing *State v. Gauthier,* 546 So.2d 652 (La.App. 4 Cir.1989)." *State v. Charles,* 00-1611, p. 4 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied,* 01-1554 (La.4/19/02), 813 So.2d 420.

In reviewing the Defendant's claim, this court must determine "if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigating factors were not established by a preponderance of the evidence." *State v. Hamilton,* 99-523, p. 7 (La.App. 3 Cir. 11/3/99), 747 So.2d 164, 168.

*State v. Johnson*, 06-623, pp. 8-9 (La.App. 3 Cir. 11/2/06), 941 So.2d 696, 702, *writ denied,* 06-3024 (La. 9/14/07), 963 So. 2d 995.

Five witnesses – Mr. Saleh, Mrs. Hussein, Mr. Duruise, Ms. Rubin, and Mr. Latiolais – all testified that Michael's anger began the exchange. Although the details given in the witnesses' testimony vary slightly, none of these five witnesses saw the victim act in any kind of threatening manner. Only Michael interpreted the victim's actions as aggressive. The victim never had any interaction with Defendant; the argument did not even appear to involve him. The situation never escalated to a point that Michael was concerned for his safety. Nevertheless, Defendant pulled a gun and shot the victim. We find that the facts of this case do not establish the mitigating factors of "sudden passion" and "heat of blood." The facts are very simple: Defendant took a pistol from his belt, pointed it at the victim, and shot him, and the victim died. We find the evidence sufficient to convict Defendant of second degree murder, and Defendant's assignment of error lacks merit.

8

<u>*Right to Confront Accusers*</u>

Defendant argues that his constitutional right to confront his accusers was violated when the trial court admitted the autopsy report over his objection. Additionally, he believes that this assignment of error cannot be adequately reviewed because the bench conference at which the issue was argued was not recorded.

The record shows that the State offered the autopsy report as Exhibit 13 to show the cause of death was a gunshot wound. A bench conference occurred off the record. When the record resumed, the court received the exhibit subject to Defendant's objection and published it to the jury. Defendant now claims that the report was a testimonial statement that was inadmissible without the testimony of the individual who made the report according to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).

The record shows that the report was admitted for the purpose of showing the cause of death. Detective Wayne Angelle testified that he attended the autopsy and took photographs at it. According to Detective Angelle, he saw the bullet wound on the victim's head above the eyebrow but no other wounds.

The Supreme Court recently held that a DNA profile was admissible without the testimony of the individual who created the profile. *Williams v. Illinois*, __ U.S. __, 132 S.Ct. 2221 (2012). Such evidence did not violate the Confrontation Clause "because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." *Id.* at 2228. The Court also found that the profile was "very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach" because it was not obtained to provide evidence against the defendant. *Id.*

9

The autopsy report in this case is likewise different from the documents intended to fall within the scope of the Confrontation Clause. The autopsy report had no bearing on the guilt *vel non* of Defendant. It simply identified the cause of death. No one disputed that the victim died from a gunshot fired by Defendant.

Even without the autopsy report in evidence, other evidence showed that Defendant fired a bullet into the victim's head, and the victim died as a result. If it was error at all, allowing the autopsy report into evidence would be harmless error. This assignment of error lacks merit.

## DECREE

Defendant's conviction and sentence for second degree murder are affirmed. The trial court is hereby ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**