# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-729

**STATE OF LOUISIANA**

**VERSUS**

**SIDNEY JOHN HANDY**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-120071
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, J. David Painter, and Shannon J. Gremillion, Judges.

**CONVICTION AFFIRMED;**
**REMANDED WITH INSTRUCTIONS.**

**Michael Harson, District Attorney**
**Allan P. Haney, Assistand District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sidney John Handy**

**GREMILLION, Judge.**

Defendant, Sidney John Handy, approached a security guard from behind at a bus terminal in Lafayette, Louisiana, and tried to forcefully remove her gun from its holster. Unsuccessful, Defendant gave up, lay on the ground, and asked the security guard to handcuff him. The security guard backed away, and Defendant got up and walked away.

Defendant was charged by bill of information with one count of attempted simple robbery, a violation of La.R.S. 14:27, and several other crimes unrelated to this appeal. He pled not guilty. Pursuant to a motion filed by Defendant, the trial court ordered the appointment of a sanity commission to evaluate Defendant's capacity to proceed to trial and to evaluate his mental condition at the time of the offense. The trial court found Defendant competent to proceed to trial. The trial court ordered the appointment of a second sanity commission. The minutes also indicate that Defendant advised the court that he wished to represent himself. Defendant was, again, found competent to stand trial.

At trial, Defendant informed the trial court that he wanted to terminate his lawyer and represent himself. Defendant proceeded with trial, allowing defense counsel to cross-examine witnesses and give a closing statement. At the conclusion of trial, the jury found Defendant guilty as charged of attempted simple robbery. Subsequently the trial court sentenced Defendant to three and one-half years at hard labor. The State filed a multiple offender bill against Defendant. The record, however, contains no disposition of the multiple offender bill. Defendant now appeals and alleges that the evidence was insufficient to convict him of simple robbery. For the following reasons, we affirm Defendant's conviction.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one possible error patent concerning the right to counsel and another easily remedied error patent concerning the failure to advise Defendant of the time period for filing an application for post-conviction relief.

First, the court minutes of trial indicate that Defendant represented himself with the help of appointed counsel. The minutes indicate that after Defendant expressed his desire to represent himself, the court advised Defendant of his rights and advised against self-representation. Defense counsel was relieved of his obligation to represent the Defendant but chose to remain in court.

In conducting an error patent review of the waiver of the right to counsel, this court would traditionally begin by examining the adequacy of the waiver. This is because before a court can allow a defendant to give up his constitutionally-protected right to counsel, the waiver must be given "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Occasionally, a criminal defendant desires to represent himself but also have an attorney as his "advisor." In such a circumstance, the law, nevertheless, requires that the defendant "must knowingly abandon his right to be represented by counsel." *State v. Dupre*, 500 So.2d 873, 876-78 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 55 (La.1987).

In the present case, at the beginning of trial, Defendant indicated that he did not wish to have an attorney representing him. The trial court explained that he did not have the right to choose court-appointed counsel but that he did have a right to hire a lawyer or represent himself. Although the trial court advised against self-

representation, Defendant indicated that he wanted to represent himself. The trial court told the appointed counsel he would have him "hang around." Counsel indicated that he would stay and perhaps could help. At Defendant's request, counsel conducted the voir dire of the prospective jurors. He then informed the court that after discussion with Defendant, he wished to waive opening statement, and Defendant agreed. During the course of trial, defense counsel responded to questions asked by the trial court, raised all defense objections, questioned all witnesses, reviewed the proposed jury charges, requested inclusion of another offense on the verdict form, gave the closing argument, and requested polling of the jurors when the verdict was returned.

In this case, counsel did not serve as a mere "advisor" but as the controlling strategist in the case. Essentially, Defendant stepped aside and allowed counsel to do everything despite his earlier request to represent himself. Under these circumstances, no error patent occurred.

Next, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof in the record indicating that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

3

**SUFFICIENCY OF THE EVIDENCE**

Defendant alleges that the evidence was insufficient to convict him of attempted simple robbery. Specifically, Defendant argues that there was no evidence that Defendant intended to take the gun away from the security guard. At most, Defendant contends, he is guilty of simple battery. This court has stated the following regarding the standard for reviewing a claim of insufficient evidence:

> The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger,* 05–11, p. 91 (La.7/10/06), 936 So.2d 108, 170, *cert. denied,* 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville,* 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford,* 05–477, p. 6 (La.2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson,* 96–1048 (La.10/4/96), 680 So.2d 1165; *State v. Lubrano,* 563 So.2d 847, 850 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *State v. Smith,* 94–3116 (La.10/16/95), 661 So.2d 442.
>
> The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan,* 07–504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than ensuring the sufficiency evaluation standard of *Jackson,* "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert,* 97–64, pp. 4–5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726–27). Our supreme court has stated:
>
>> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. 120, ___, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (quoting *Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Applied in cases relying on circumstantial evidence, . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother,* 09–2357, pp. 10–11 (La.10/22/10), 49 So.3d 372, 378 (alteration in original).

*State v. Francis*, 12-1221, p. ___ (La.App. 3 Cir. 4/11/13), ___ So.3d ___, ___.

In *State v. Young*, 00-1437, pp. 7-8 (La. 11/28/01), 800 So.2d 847, 851, the supreme court set forth the elements of attempted simple robbery:

La.R.S. 14:65(A) defines simple robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon. La.R.S. 14:27(A) further provides that to attempt to commit a crime, an accused must do or omit an act tending directly toward the accomplishment of the crime while "having a specific intent" to commit the crime. La.R.S. 14:10(1) defines specific intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. In order to prove an attempted simple robbery, the State had to prove that the defendant: (1) had a specific intent to commit the crime of simple robbery, and (2) did an act for the purpose of and tending directly toward the commission of the crime of simple robbery.

In the present case, Melinda Boudreaux testified that on June 19, 2008, she was working as a security guard at a bus terminal in Lafayette. While walking around and checking the bus terminal, Ms. Boudreaux was approached by Defendant. Defendant told Ms. Boudreaux that he was a supervisor for "LUS."[1]

---

[1] The record does not indicate what "LUS" stands for.

5

This made Ms. Boudreaux nervous and caused her to start backing up. According to Ms. Boudreaux, Defendant "all of a sudden" came behind her and started "fighting [her] for [her] gun." Ms. Boudreaux testified that Defendant demanded, "Let go of the gun. Give me your gun." Ms. Boudreaux also testified that Defendant threatened to shoot her. When first asked if Defendant tried to remove something from her hip, Ms. Boudreaux replied, "No." Then, when the State asked her if Defendant tried to remove her gun, Ms. Boudreaux responded, "Yes. He tried to remove my gun." According to Ms. Boudreaux, Defendant tried to get the gun out of her holster. When asked by the State if Defendant tried to forcefully take the gun from her hip, Ms. Boudreaux replied, "Yes." The State then asked Ms. Boudreaux whether Defendant succeeded in getting the gun. Ms. Boudreaux answered, "No. He gave up and he got on the ground and he wanted me to handcuff him." Ms. Boudreaux did not have any handcuffs, so she just backed up, and Defendant got up and walked away. Ms. Boudreaux identified Defendant as the person who forcefully grabbed her and tried to remove her gun. Finally, during her direct testimony, Ms. Boudreaux identified State's Exhibit 1 as a video surveillance of the incident. The video was played for the jury. Narrating a particular scene in the video, Ms. Boudreaux testified, "He's trying to get my gun and I was having to fight for him not to get my gun." While the video does not show a close-up of the incident, it does show Defendant wrapping his arms around Ms. Boudreaux while Ms. Boudreaux appears to be trying to get away.

On cross-examination, Ms. Boudreaux testified that Defendant did not punch her and did not put her in a choke hold. Ms. Boudreaux also admitted that earlier on the day of trial, she mistakenly identified the wrong person when a detective asked her to point out Defendant. Ms. Boudreaux realized that she pointed out the

wrong person when she saw Defendant. Ms. Boudreaux also admitted that in her statement to police, she did not use the words "fought" or "steal." Basically, Ms. Boudreaux admitted that in her statement to police she indicated only that Defendant put his hand on her holster.

On re-direct examination, Ms. Boudreaux stated that she was one hundred percent sure that Defendant was the person who attacked her and tried to take her gun. When asked if there was any doubt in her mind, Ms. Boudreaux stated, "No doubt whatsoever."

The only other witness to testify at trial was Alberta Melancon, a bus operator for Lafayette Transit. When asked to describe what she saw on the day in question, Ms. Melancon testified:

> I loaded up my passengers and I was getting ready to leave. And the security guard was standing not too far from me, where my bus was parked. And the young man was talking to her and then after that he grabbed her from her waist and was trying to remove her weapon. And then after that, that's when I called my supervisor to call the police.

On cross-examination, Ms. Melancon stated that all she saw Defendant do is put his hand on Ms. Boudreaux's holster.

In brief, Defendant argues that nothing in the evidence presented indicates that he intended to take Ms. Boudreaux's gun:

> In the case *sub judice*, other than Melinda Boudreaux's statement that [Defendant] said, "Let go of the gun. Give me your gun," there is no indication that [Defendant] intended to take her gun. There was no testimony presented that [Defendant] removed the gun from the holster or did anything other than touch the holster. Most gun holster's have a strap which keeps the [g]un in the holster. There was no indication that [Defendant] unsnapped this strap. In addition, [Defendant's] actions in getting on the ground immediately afterwards and telling Melinda Boudreaux to handcuff him indicates that [Defendant] does have impaired judgment and suffers from below average intelligence. [Defendant's] behavior seems to indicate a motive other than robbery for his actions. Thus, the evidence did not

7

preclude every reasonable hypothesis of innocence. At most, [Defendant] is guilty of simple battery.

In support of his argument, Defendant cites two cases where the supreme court and this court found insufficient evidence to convict the defendants of attempted simple robbery. In *Young*, 800 So.2d 847, the Louisiana Supreme Court found no evidence was presented that Young intended to take something of value from the victim when the evidence showed that Young surprised the victim by jumping onto the store counter, subduing the victim, and stating, "I got you. I got you." *Id.* at 851. Although the supreme court found there was sufficient evidence to convict Young of second degree battery, the court found the evidence was insufficient to find Young guilty of attempted simple robbery.

Likewise, in *State v. Stone*, 615 So.2d 38 (La.App. 3 Cir.), *writ denied*, 623 So.2d 1302 (La.1993), this court found insufficient evidence to convict Stone of attempted simple robbery. While in a store, Stone gathered several items and placed them on a counter. Sometime afterward, Stone attacked the store clerk with a knife. After a brief struggle, Stone gave up the attack. Finding Stone committed no overt act tending to show that she intended to take the items she gathered and placed on the counter and finding no evidence that Stone demanded anything of value from the store clerk, this court found the evidence was insufficient to convict Stone of attempted simple robbery.

In its brief, the State argues that the cases cited by Defendant are distinguishable from the case at hand. Unlike the evidence in *Young* and *Stone*, the State argues that the evidence in the present case consisted of two witnesses who testified that Defendant tried to remove Ms. Boudreaux's weapon and a video surveillance showing that he attempted to take Ms. Boudreaux's gun from her hip.

8

We agree. Considering the video surveillance which showed Defendant wrapping his arms around Ms. Boudreaux while Ms. Boudreaux attempted to get away, the live testimony of Ms. Boudreaux and Ms. Melancon that the Defendant placed his hands on Ms. Boudreaux's holster, Ms. Boudreaux's testimony that Defendant told her to give him her gun, Ms. Boudreaux's testimony that Defendant struggled with her to take her gun, and Ms. Melancon's testimony that she saw Defendant grab Ms. Boudreaux's waist and try to remove her weapon, the evidence sufficiently showed that Defendant specifically intended to take Ms. Boudreaux's gun and committed an overt act toward that purpose.

## DECREE

Defendant's conviction is affirmed. The trial court is, hereby, directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that the Defendant received the notice.

**CONVICTION AFFIRMED**;
**REMANDED WITH INSTRUCTIONS**.